NORTH CAROLINA INDUSTRIAL COMMISSION ET AL. V. NATHAN
O'BERRY, STATE TREASURER.

(Filed 23 October, 1929.)

**1. Master and Servant B a—North Carolina Industrial Commission must operate under budgetary policy of the State.**

The North Carolina Industrial Commission created by the statute is an agency of the State and subject to the fixed policy of the State requiring each department of the State government to operate within the appropriations allowed to it by the Budget Bureau under the statute creating it.

**2. Same—Funds collected from self-insurers are available to Industrial Commission under allocation of Budget Bureau.**

The moneys received under section 73 (j) of the Workmen's Compensation Act is a special fund available to the Industrial Commission for its maintenance, but comes within the statute creating the Budget Bureau, and the two statutes should be construed *in pari materia*, and *Held*, the Budget Bureau is authorized and required to allocate to the Industrial Commission so much of the special fund created by said section 73 (j) as is necessary to carry out its function efficiently, and also allocate additional money from funds of a similar nature to the extent and amount necessary to the Industrial Commission for this purpose.

THIS was a controversy without action, heard by *Nunn, J.,* at July Term, 1929, of WAKE.

The agreed statement of facts, upon which the judgment was rendered, tended to show in substance that the plaintiff was duly created under authority of chapter 120, Public Laws of 1929, and that the defendant is the Treasurer of the State. Chapter 280 of Public Laws of 1929, Division 4, Section 1, Item 17, appropriated for the use of the plaintiff the sum of $42,000 for each year of the biennium. Section 67 of chapter 120, Public Laws of 1929, permits certain employers to become self-insurers. Section 73 (j) provides that "the Commission shall assess against such payroll a maintenance fund tax computed by taking 2½ per cent of the basic premiums chargeable against the same or most similar industry or business taken from the manual insurance rate for compensation then in force in this State." On 26 June, 1929, the Commission received from the city of Greensboro a check in the amount of $214.15, representing the amount assessed against said city of Greensboro as a self-insurer by the Industrial Commission under the provisions of said subsection (j) of said section 73. Upon receipt of said check the Commission deposited the check in a Raleigh Bank as a special deposit for the use of the Commission. The defendant, State Treasurer, declined to accept the deposit "as a special deposit for the use of the Commission, but on the contrary, under the advice of the Attorney-

General, said Treasurer insists and demands that the said fund be deposited to the credit of the State Treasurer for the use of the State."

The facts further tended to show that the appropriation of $42,000 for the use of the Commission was wholly inadequate to enable the Commission to properly and efficiently discharge the duties imposed by law, and that in order to discharge such duties the sum of $159,298.54 would be required for the first year of the biennium and a somewhat smaller sum for the second year.

The plaintiff thereupon brought this action, asking that a writ of mandamus should issue, ordering the State Treasurer to place said fund and such other funds of like character in a special account "to be used for the maintenance of the North Carolina Industrial Commission."

The judgment of the court was as follows:

"This controversy without action coming on to be heard before Hon. R. A. Nunn, judge presiding at the July Term, 1929, of the Superior Court of Wake County, and being heard at said time by consent of all parties hereto, upon the facts agreed; and the court, after due consideration, finding the facts to be as set forth in the agreed statement of facts, and being of the opinion that all funds that shall be assessed and collected by the North Carolina Industrial Commission under the provisions of section 73, subsection (j) of the Workmen's Compensation Act (chapter 120, N. C. Public Laws of 1929), including the check of the city of Greensboro already collected by the Commission under the provisions of said section, as set forth in the agreed statement of facts, are by the provisions of said act, intended to be available as a special fund for the uses of said Industrial Commission to meet its maintenance and expense requirements, and as such, should be deposited as collected by the Commission, to the credit of the Treasurer as a special fund for such purpose, and so accepted by the said Treasurer and carried on his books accordingly, to be paid out upon proper warrants issued by the Auditor of the State upon requisition of the said Industrial Commission for the payment of the proper expenses of said Commission; it is, upon motion of J. M. Broughton, attorney for the plaintiffs:

Now, therefore, ordered, considered and adjudged by the court that the defendant, Treasurer of the State of North Carolina, be, and he is hereby authorized and directed to accept as a special fund for the uses of the said Industrial Commission, to meet its maintenance and expense requirements, the specific deposit of $214.15, referred to in the agreed statement of facts, together with all other funds which shall be collected by the Industrial Commission under the provisions of said section 73, subsection (j) of the said Workmen's Compensation Act, as the same shall be collected and deposited from time to time by the said Industrial

Commission, and that said funds when so deposited shall be set up on the books of the Treasurer of the State as a special account, available for the payment of proper expenses of said Commission upon warrants issued for such purpose by the State Auditor, upon proper requisition of the Industrial Commission, in the manner provided by law."

*J. M. Broughton for plaintiff.*
*Attorney-General Brummitt and Assistant Attorney-General Nash for defendant.*

BROGDEN, J. Do the words "the Commission shall assess against such payroll a maintenance fund tax computed," etc., contained in section 73, subsection (j) of the Workmen's Compensation Act constitute the proceeds of such assessment a special fund for the exclusive use of the Industrial Commission?

The Industrial Commission is an agency of the State, established by chapter 120, Public Laws of 1929.

The General Assembly having created this important arm of service, undertook to provide for the maintenance and support thereof. It now appears that the general appropriation is wholly inadequate to enable the Commission to discharge with efficiency the extensive duties required by the law, thus resulting in a serious impairment of the quality of service to be rendered the people of the State. Chapter 280, Public Laws of 1929, Division 4, Item 17, appropriated for the maintenance of the Commission the sum of $42,000 for each year of the biennium.

The plaintiff contends that if it is permitted to use the proceeds of the assessments against self-insurers that such assessments will create for its use a sum not only sufficient, but perhaps in excess of its reasonable needs. The Commission further contends that the General Assembly, realizing that the general appropriation might be inadequate, used the words "maintenance fund tax" in section 73, subsection (j) in the sense of an additional appropriation for its use.

It is manifest, therefore, that the case turns upon the construction of the words "a maintenance fund tax" employed in said section 73 (j). It must be noted that this section does not empower the Commission to collect the money, but merely to levy the assessment. It must be further noted that if the funds derived from the assessment should exceed the amount reasonably necessary for the use of the Commission that no provision is made for the disposition of any balance.

It must be conceded that the language is indefinite and capable of more than one construction. In order, therefore, to arrive at the true construction, it is manifest that the words employed by the General

Assembly must be read and interpreted in the light of the general policy of the State with reference to the maintenance of State agencies. An examination of legislative acts pertinent thereto clearly disclose the out- standing fact that the budget system is a fixed policy of the State. This idea is fully supported by the provisions of the Consolidated Budget Act, which is chapter 100, Public Laws of 1929. Section 5 of said act pro- vides that "all moneys heretofore and hereafter appropriated shall be deemed and held to be within the terms of this act and subject to its provisions unless it shall be otherwise provided in the act apppropriat- ing the same; and no money shall be disbursed from the State Treasury except as herein provided." Again in section 17 thereof it is declared: "The provisions of this act shall continue to be the legislative policy with reference to the making of appropriations and shall be treated as rules of both branches of the General Assembly until and unless the same may be changed by the General Assembly either by express enactment or by rule adopted by either branch of the General Assembly." The same idea is further expressed in section 18 of said act, providing that "every State department, . . . Commission . . . shall operate under an appropriation made in accordance with the provisions of this act; and no State department, . . . Commission or other State agency, . . . shall expend any money, except in pursuance of such appropria- tion, and the rules, requirements and regulations made pursuant to this act."

These provisions of law demonstrate beyond a doubt that the Indus- trial Commission must operate within the provisions and limitations of the budgetary policy of the State as declared by the General Assembly.

However, sections 28 and 29 of the Budget Act refer to departments or agencies "as receive moneys available for expenditures by them." Section 29 provides: "It is the intent and purpose of this act that every department . . . Commission . . . that expends money appro- priated by the General Assembly or money collected by or for such de- partment, . . . Commission, or agencies . . . under any gen- eral law of this State, shall be subject to and under the control of every provision of this act," etc.

Conceding, by broad interpretation, that the words "maintenance fund tax" occurring in section 73 (j) of the Workmen's Compensation Act created a fund available for the use of the Commission, the provisions of sections 28 and 29 of chapter 100 of Public Laws of 1929 limit or re- strict the availability of such funds by providing that the expenditure thereof "shall be subject to and under the control of every provision of this act." In other words, if a State agency collects or receives funds available for its use, who must determine the amount to be used by any

such agency in the absence of express or necessarily implied legislative designation? If the agency receiving the funds can use them according to its own discretion or according to its own idea of its needs or necessities, then clearly, large sums of the State's money would be unbudgeted, and the whole scheme of law which is built upon a sound fiscal policy, would become a medley of financial confusion and a patchwork of financial control.

Viewing the law in its entirety, we are of the opinion, and so adjudge, that the proceeds derived from self-insurers under the Compensation Act are available for the use of the Industrial Commission, and that under the law the Budget Bureau has the power and authority to allocate to the Commission the whole of such proceeds or such amounts thereof as in the judgment of the Budget Bureau may be reasonably necessary for the proper and efficient maintenance of the Commission.

The record in the case at bar discloses that the Commission will be greatly handicapped unless additional funds can be allocated. The Budget Bureau has the power, under the law, to meet this emergency by permitting the Commission to use the fund in controversy and other funds of similar nature to the extent and to the amount necessary to enable it to serve in an efficient manner the people of this State.

Reversed.